# EXHIBIT DD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| HARVINDER S. SANDHU, M.D. and )<br>KYPHON INC., )<br>          )<br>          Plaintiffs,    )<br>          )<br>v.         )<br>          )<br>MEDTRONIC SOFAMOR DANEK, INC., )<br>MEDTRONIC SOFAMOR DANEK USA, )<br>INC. and SDGI HOLDINGS, INC. )<br>          )<br>          Defendants.   ) | No. 05-2863-Ml V |

## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
## FOR INVALIDITY OF U.S. PATENT NO. 5,108,404
## UNDER 35 U.S.C. §112

COME NOW Defendants Medtronic Sofamor Danek, Inc., Medtronic Sofamor Danek

USA, Inc. and SDGI Holdings, Inc. (collectively "Medtronic") and move this Court, pursuant to

Rule 56 of the Federal Rules of Civil Procedure, for partial summary judgment. In particular,

U.S. Patent No. 5,108,404 is invalid pursuant to 35 U.S.C. §112 for failure to meet the written

description requirement of the patent laws. Therefore, Kyphon's claim of patent infringement of

the '404 patent fails as a matter of law and summary judgment should be granted in favor of

Defendants on this claim.

In support of this Motion for Summary Judgment, Defendants rely upon a memorandum

submitted contemporaneously herewith, along with exhibits as noted therein.

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully request that this

Motion for Partial Summary Judgment be granted and that Kyphon's claim for infringement of

the '404 patent be dismissed with prejudice.

Respectfully submitted,

s/ Bradley E. Trammell
Leo Bearman, Jr. (#8363)
Bradley E. Trammell (#13980)
**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC**
165 Madison Avenue, Suite 2000
Memphis, TN 38103
(901) 526-2000
btrammell@bakerdonelson.com

OF COUNSEL:
Steven M. Zager (*pro hac vice*)
Ed Fernandes
Michael Simons (*pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1111 Louisiana Street, 44th Floor
Houston, Texas 77002
Telephone: (713) 220-5800
Facsimile: (713) 236-0822

Michael A. O'Shea (*pro hac vice*)
Paul Gennari *(pro hac vice)*
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, DC 20036-1564
Telephone: (202) 887-4000
Facsimile: (202) 887-4288

Attorneys for Defendants Medtronic
Sofamor Danek, Inc., Medtronic Sofamor
Danek USA, Inc. and SDGI Holdings, Inc.

2

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of October, 2006, a copy of the foregoing electronically filed Defendants' Motion for Partial Summary Judgment was served on the parties listed below via first class mail, postage prepaid, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party:

Glen G. Reid, Jr.
Mark Vorder-Bruegge
Wyatt Tarrant & Combs
P. O. Box 775000
Memphis, TN  38177-5000

Frank E. Scherkenbach
Fish & Richardson P.C.
225 Franklin Street
Boston, MA  02110-2804

Thomas L. Halkowski
Fish & Richardson P.C.
919 N. Market Street
Suite 1100
Wilmington, DE  19899-1114

Karen I. Boyd
Fish & Richardson, P.C.
500 Arguello Street
Suite 500
Redwood City, CA  94063

Peter J. Toren
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019

s/ Bradley E. Trammell

M BET 989493 v1
2699732-002198 10/16/2006

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| HARVINDER S. SANDHU, M.D. and KYPHON INC.,   ) <br> ) <br> ) | |
| Plaintiffs,   ) <br> ) | No. 05-2863-MI V |
| v.   ) <br> ) | |
| MEDTRONIC SOFAMOR DANEK, INC., MEDTRONIC SOFAMOR DANEK USA, INC. and SDGI HOLDINGS, INC.,   ) <br> ) <br> ) <br> ) | |
| Defendants.   ) | |

## MEDTRONIC'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT FOR INVALIDITY OF U.S. PATENT NO. 5,108,404 UNDER 35 U.S.C. § 112

Leo Bearman, Jr. (#8363)
Bradley E. Trammell (#13980)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
165 Madison Avenue, Suite 2000
Memphis, TN 38103
(901) 526-2000
ATTORNEYS FOR DEFENDANTS
  MEDTRONIC SOFAMOR DANEK, INC.,
  MEDTRONIC SOFAMOR DANEK USA,
  INC. and SDGI HOLDINGS, INC.

OF COUNSEL:

Steven M. Zager (*pro hac vice*)
Edward F. Fernandes (*pro hac vice*)
Michael Simons (*pro hac vice*)
AKIN GUMP STRAUSS HAUER &
  FELD LLP
1111 Louisiana Street, 44th Floor
Houston, TX 77002
(713) 220-5800

Michael A. O'Shea (*pro hac vice*)
Paul A. Gennari *(pro hac vice)*
AKIN GUMP STRAUSS HAUER &
  FELD LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, DC 20036
(202) 887-4000

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................... 1

II.     THE RELEVANT LAW ................................................................................................. 2

        A.      Summary Judgment Is Appropriate ..................................................................... 2

        B.      The Law Of Written Description Requires Disclosure Of "The Invention" ........... 2

III.    STATEMENT OF UNDISPUTED FACTS ..................................................................... 4

        A.      The '724 Application ............................................................................................ 4

        B.      The '862 Application ............................................................................................ 7

        C.      Kyphon's Related Patents .................................................................................... 7

        D.      The *Disc-O-Tech* Case ...................................................................................... 9

        E.      The Arcuate XP ................................................................................................. 10

IV.     THE '404 PATENT IS INVALID UNDER 35 U.S.C. § 112 ¶ 1 ................................. 10

        A.      Claims 1 And 12 Have Been Interpreted As Not Being Limited To
                Compacting With A Balloon ............................................................................... 10

        B.      The Only Written Description In The '404 Patent Specification Is To
                Compact With An Inflatable Device Such As A Balloon ..................................... 11

        C.      The Specification Demonstrates That The Applicants Were Not In
                Intellectual Possession Of The Invention As Claimed ........................................ 12

V.      CONCLUSION ........................................................................................................... 13

M BET 989507 v1
2699732-002198 10/16/2006

## **TABLE OF AUTHORITIES**

**CASES**

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) .......................................................................2

*Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001) ..........................................4

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 730-31 (2002) .........3

*In Re Curtis*, 354 F.3d 1347, 1353 (Fed. Cir. 2004) .....................................................................12

*In Re Sus*, 306 F.2d 494, 505 (C.C.P.A. 1962)............................................................................13

*LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336 (Fed. Cir. 2005).............3, 4, 12

*Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997)..............................3, 4

*PIN/NIP, Inc. v. Platte Chemical Co.,* 304 F.3d 1235, 1248 (Fed. Cir. 2002) ...................1, 3, 4, 13

*Porter v. Farmers Supply Serv., Inc.*, 790 F.2d 882, 884 (Fed. Cir. 1986) .....................................2

*Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1323 (Fed. Cir. 2000).................................4

*Reiffin v. Microsoft Corp.*, 214 F.3d 1342, 1345 (Fed. Cir. 2000) ...................................................3

*Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1158 (Fed. Cir. 1998) ........................................................4

*University of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916, 926 (Fed. Cir. 2004) .............3, 4

*Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991)......................................3, 12

**STATUTES**

35 U.S.C. § 112 ¶ 1 ..................................................................................................................2, 12

37 C.F.R. § 1.75(d)(1)..................................................................................................................2

**RULES**

Fed. R. Civ. P. 56(c)....................................................................................................................2

M BET 989507 v1
2699732-002198 10/16/2006

## TABLE OF EXHIBITS

The evidence that supports this Summary Judgment Motion is contained in Defendants' October 16, 2006 Appendix of Exhibits submitted with Defendants' Response to Kyphon's Application for Preliminary Injunction, which is interrelated to this Summary Judgment Motion. The October 16, 2006 Appendix of Exhibits is incorporated herein by reference as if fully set forth herein. The specific exhibits from that Appendix used for this Summary Judgment Motion are listed here for the Court's convenience:

| Exh. No. | Description |
| --- | --- |
| 2. | Declaration of Stephen M. Belkoff, Ph.D. |
| 1.C | U.S. Patent No. 5,108,404, "Surgical Protocol For Fixation Of Bone Using Inflatable Device" |
| 1.D | U.S. Patent No. 4,969,888, "Surgical Protocol For Fixation Of Bone Using Inflatable Device" |
| 1.E | U.S. Patent No. 6,235,043 |
| 1.H | U.S. Patent No. 6,607,544 |
| 1.L | U.S. Patent No. 6,641,587 |
| 2.C | The '404 Patent Prosecution History |
| 2.D | The '888 Patent Prosecution History |
| 3. | Declaration of Gregory J. Vaughn, M.D. |
| 24. | Special Master's Opinion and Order on Claim Construction, *Kyphon, Inc. v. Disc-O-Tech Med. Techs., Ltd.*, C.A. No. 04-204-JJF (May 16, 2005 D. Del.) |
| 25. | Memorandum in Support of Kyphon's Application for Preliminary Injunction (September 28, 2006). |
| 27.A | U.S. Patent No. 6,981,981 |
| 27.B | U.S. Patent No. 6,663,647 |
| 27.C | U.S. Patent No. 6,423,083 |
| 27.D | U.S. Patent No. 6,066,154 |
| 27.E | U.S. Patent No. 5,827,289 |
| 27.F | U.S. Patent No. 6,979,341 |

iii

27.G     U.S. Patent No. 6,719,773

27.H     U.S. Patent No. 6,716,216

27.I     U.S. Patent No. 6,623,505

27.J     U.S. Patent No. 6,280,456

27.K     U.S. Patent No. 5,972,015

27.L     U.S. Patent No. 6,899,719

27.M     U.S. Patent No. 6,248,110

27.N     U.S. Patent No. 6,048,346

27.O     U.S. Patent No. 6,575,919

27.P     U.S. Patent No. 6,923,813

28.      Complaint, *Kyphon, Inc. v. Disc-O-Tech Med. Techs., Ltd.*, C.A. No. 04-204-JJF
         (April 2, 2004 D. Del.)

M BET 989507 v1
2699732-002198 10/16/2006

## I.     INTRODUCTION

Kyphon, Inc. has asserted U.S. Patent No. 5,108,404 "Surgical Protocol For Fixation Of Bone Using Inflatable Device" (the "'404 patent") against Medtronic Sofamor Danek, Inc., Medtronic Sofamor Danek USA, Inc. and SDGI Holdings, Inc. (collectively "Medtronic"). Claims 1 and 12 of the '404 patent asserted by Kyphon are invalid under 35 U.S.C. § 112 ¶ 1 for failure to meet the written description requirement of the patent laws.[1]  The asserted claims require "compacting the bone marrow to increase the volume of said passage."  The only method of compacting disclosed in the '404 patent specification involves the use of a balloon or inflatable device (hereinafter "balloon").  Indeed, the title of the '404 patent as well as its specification makes clear that the "invention" is limited to the use of a balloon to compact bone marrow.  However, in this litigation Kyphon alleges that the asserted claims are not limited to a balloon for compacting.

The law is clear that "a broad claim is invalid when the entirety of the specification clearly indicates that the invention is of a much narrower scope."  *PIN/NIP, Inc. v. Platte Chemical Co.,* 304 F.3d 1235, 1248 (Fed. Cir. 2002) (citation omitted).  Since there is no written description support for compacting without a balloon, the asserted claims are invalid under 35 U.S.C. § 112 ¶ 1.  Moreover, this issue is ripe for summary judgment because there can be no dispute regarding the law and the facts.

---

[1]     In support hereof, Medtronic submits as Exh. 2 the Declaration of Stephen M. Belkoff, Ph.D., Associate Professor, Department of Orthopaedic Surgery, Director, Orthopaedic Instrumentation Laboratory, Johns Hopkins Bayview Medical Center.

## II.    THE RELEVANT LAW

### A.    Summary Judgment is Appropriate.

Summary judgment "shall be rendered forthwith if ... there is no genuine issue as to any

material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.

P. 56(c). The Supreme Court has emphasized that "[s]ummary judgment procedure is properly

regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal

Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination

of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citation omitted).

Summary judgment is as appropriate in patent cases as in other cases, and the "[Federal

Circuit] has specifically affirmed the grant of summary judgment" in patent cases. *Porter v.*

*Farmers Supply Serv., Inc.*, 790 F.2d 882, 884 (Fed. Cir. 1986) (The Federal Circuit "has

repeatedly upheld the grant of summary judgment in favor of those accused of infringement

where there was no genuine issue of material fact").

### B.    The Law of Written Description Requires Disclosure of "The Invention".

All patent claims must be sufficiently supported by a written description of the invention

in the specification:

> The specification shall contain a written description of the
> invention and of the manner and process of making and using it, in
> such full, clear, concise, and exact terms as to enable any person
> skilled in the art to which it pertains, or with which it is most
> nearly connected, to make and use the same ...

U.S.C. § 112 ¶ 1. The statute requires that "the terms and phrases used in the claims must find

clear support or antecedent basis in the description so that the meaning of the terms in the claims

may be ascertainable by reference to the description." 37 C.F.R. § 1.75(d)(1) (1999). The U.S.

Supreme Court recently expressed the reasoning for this requirement:

2

> The patent laws promote the Progress of Science and useful Arts
> by rewarding innovation with a temporary monopoly.  The
> monopoly is a property right; and like any property right, its
> boundary should be clear.  ...  A patent owner should know what
> he owns, and the public should know what he does not.

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 730-31 (2002).

Thus, the specification serves dual purposes: (a) to describe the invention sufficiently to

demonstrate that the inventor actually invented what is now claimed and (b) to "teach the

invention by describing it." *University of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916,

926 (Fed. Cir. 2004).  The written description of the invention ensures that "the scope of the right

to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution

to the field of art as described in the patent specification." *Reiffin v. Microsoft Corp.*, 214 F.3d

1342, 1345 (Fed. Cir. 2000).  In other words, the specification must "convey with reasonable

clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of

the invention." *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991).

Accordingly, broad claims are necessarily invalid when the entirety of the specification clearly

indicates that the invention is of a much narrower scope.  *PIN/NIP,* 304 F.3d at 1248; *see also*

*LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336 (Fed. Cir. 2005) (broad method

claim not supported by specification describing only one specific means to perform method).

Without adherence to the written description requirement, the public would be left to the

difficult task of speculating "as to modifications that the inventor might have envisioned, but

failed to disclose." *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997).

To meet the written description requirement, the specification must convey with

reasonable clarity to one of ordinary skill in the art that the inventors themselves possessed their

invention as broadly as it is claimed in the patent "by describing the invention, with all its

3

claimed limitations." *Id.* at 1572; *see also Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1158 (Fed. Cir. 1998). The description must be in such detail that one skilled in the art could readily discern that the inventor was in possession of the invention. In other words, one skilled in the art reading the original disclosure must "immediately discern the limitation at issue" in the claims. *Purdue Pharma L.P. v. Faulding, Inc.*, 230 F.3d 1320, 1323 (Fed. Cir. 2000) (citations omitted).

The invalidity of a patent for lack of written description, like any other issue, may be determined on summary judgment. *See, e.g., University of Rochester,* 358 F.3d at 930; *LizardTech,* 424 F.3d at 1346-47. A party "seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of invalidity." *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001). A determination that a patent is invalid for failure to meet the written description requirement is a question of fact. *PIN/NIP,* 304 F.3d at 1243.

As demonstrated in detail below, in the present case Kyphon's attempt to assert claims 1 and 12 of the '404 patent to encompass non-balloon devices is not supported by the original disclosure, violates the written description requirement, and renders these claims invalid.

## III. STATEMENT OF UNDISPUTED FACTS

### A. The '724 Application

1. On February 9, 1989, U.S.S.N. 308,724 "Surgical Protocol For Fixation Of Bone Using Inflatable Device" (the "'724 application") was filed by Arie Scholten and Mark Reiley.

2. Claim 1 as initially filed read

A method of fixation of a fracture or impending fracture of an osteoporotic bone comprising

[1] forming a passage in the bone;

[2] increasing the volume of said passage; and

[3] filling the passage with a flowable material capable of setting to a hardened condition.

4

(Exh. 2.D, '888 Patent Prosecution History, Application, Claim 1, at 18 (February 9, 1989).)

3. On August 26, 1989, claim 1 was rejected in view of prior art. (Exh. 2.D, '888 Patent Prosecution History, Office Action, at 2-4 (August 26, 1989).)

4. On December 1, 1989, the second step of claim 1 was modified from "increasing the volume of said passage" to "compacting the bone marrow to increase the volume of said passage." (Exh. 2.D, '888 Patent Prosecution History, Amendment, Amended Claim 1, at 3 (December 1, 1989).)

5. As its title made clear, the only method contemplated by the applicants in the '724 application for carrying out the "compacting" step was through the use of a balloon:

> *The method of the present invention* includes a series of steps including forming an incision in the body and penetrating the bone having the fracture with instruments including a guide pin and a cannula, drilling the bone marrow of the bone to enlarge the cavity or passage to be treated, following which an *inflatable device*, such as an *expandable balloon*, is inserted in the cavity and inflated. *The expansion of the balloon causes a compacting of the bone marrow* against the inner surface of the outer cortical wall of the bone to be treated *to further enlarge the cavity*.

(Exh. 2.D, '888 Patent Prosecution History, Application, at 3 (February 9, 1989)(emphasis added).)

6. The '724 application described the "compacting" step in great detail, exclusively in terms of the use of a balloon:

> The surgical procedure for treating a vertebral body is as follows:
>
> *The next step [2[ to be performed in carrying out the method of the present invention* is to withdraw the pointed guide pin 70 and replace it with a *deflated elliptical device or balloon* 65. The *elliptical balloon* 65 is monitored fluoroscopically. This is achieved by *inflating the elliptical balloon* 65 to a pressure in the range of 50 to 300 psi with a radio-opaque contrast medium by an injector as shown in Fig. 24. The purpose of the *elliptical balloon* 65 is to center a *second, checker-shaped inflatable device or balloon* 76 (Figs. 21-23) in the interior of vertebral body 66. After

5

the *elliptical balloon is deflated and removed, checker-shaped balloon 76 is inserted* into the cannula and directed into the interior of vertebral body 66 as shown in fig. 21.

The *diameter of balloon* 76 is determined by the pre-operative CAT-scan results. The diameter is in the range of 1.0 cm to 3.5 cm. The axial *height of the balloon* (Fig. 23) is determined by the intra-operative reduction height of the vertebral body fracture. The height is in the range of 0.5 cm to 4.0 cm. If the *balloon placement* is somewhat eccentric, a *smaller balloon may be needed*. The *balloon* 76 has a neck 77, and the *outer configuration of the balloon* 76 is substantially the *same as that of the inner surface of the cortical wall of the vertebral body* 66.

The *progress of balloon inflation is monitored* fluoroscopically to ensure proper *insertion of the balloon* 76. The *balloon is injected*, gradually, with contrast as in the case of the *elliptical balloon* to a maximum height. This may require pressure as great as 300 psi to accomplish. The *balloon's inflation* should be monitored on the lateral fluoroscopic view of the spine. Posterior displacement of the bone into the spinal canal or *full expansion of the balloon 76 signals the termination of the chamber preparation [step [2]]*. Further expansion of the balloon at this point could result in spinal cord or root injury.

*As balloon 76 is inflated*, it *forces the osteoporotic bone marrow 67 laterally and outwardly of the wall of the vertebral body 66*. This *compacts the bone marrow and leaves a void in the interior of the vertebral body* to be treated. The compacted bone marrow forms a dam to block any fracture of the vertebral body. Thus, when liquid synthetic bone or methyl methacrylate cement is forced into the void [step [3]], the compacted bone marrow will substantially prevent flow through the fracture.

(*Id.* at 11-13; emphasis added.)

7.     The word "balloon" appears 42 times in the specification and "inflatable,"

"inflated" and "inflating" are collectively used 46 times.

8.     The '724 application issued as U.S. Patent No. 4,969,888, "Surgical Protocol For

Fixation Of Bone Using Inflatable Device," (the "'888 patent") on November 13, 1990. (Exh.

1.D, '888 Patent.)

6

**B.**     **The '862 Application**

On August 15, 1990, U.S.S.N. 567,862, "Surgical Protocol For Fixation Of Bone Using

Inflatable Device" (the "'862 application") was filed by Arie Scholten and Mark Reiley as a

continuation-in-part of the '724 application/'888 patent.

9.     Claim 1 as filed in the '862 application reads:

> A method of fixation of a fracture or impending fracture of a bone
> having bone marrow therein comprising:
>
> [1] forming a passage in the bone marrow;
>
> [2] compacting the bone marrow to increase the volume of said
> passage; and
>
> [3] filling the passage with a flowable material capable of setting
> to a hardened condition.

(Exh. 2.C, '404 Patent Prosecution History, Application, Claim 1, at 18 (August
15, 1990).)

10.     The '862 application issued as the '404 patent without any changes to claim 1 on

April 28, 1992.

11.     Claim 12 of the '404 patent depends from claim 1:

> A method as set forth in claim 1, wherein the fracture is a fracture
> of a vertebral body of the human spine.

(*See* Exh. 1.C, '404 Patent, col. 10, lines 11-13.)

**C.**     **Kyphon's Related Patents**

12.     In the 17 years since the filing of the '724 Application, Kyphon has applied for

and obtained many additional patents directed to "improvements" on the method originally

disclosed.

13.     In each patent referring to the '404 patent, Kyphon publicly confirmed that the

'404 patent only disclosed a balloon for performing the compacting step:

7

> The present invention is directed to a balloon-like inflatable device or balloon for use in carrying out the apparatus and method of the above-mentioned U.S. Patent Nos. 4,969,888 and 5,108,404. Such inflatable devices, hereinafter sometimes referred to as balloons, have shapes for compressing cancellous bone and marrow (also known as medullary bone or trabecular bone) against the inner cortex of bones whether the bones are fractured or not.

(Exhs. 27.A-E and Exh. 1.E, U.S. Patent No. 6,981,981, col. 3, lines 52-59; U.S. Patent No. 6,663,647, col. 3, lines 47-54; U.S. Patent No. 6,423,083, col. 3, lines 38-45; U.S. Patent No. 6,235,043, col. 3, lines 34-41; U.S. Patent No. 6,066,154, col. 3, lines 34-41; U.S. Patent No. 5,827,289, col. 4, lines 9-17.)

\*   \*   \*   \*   \*

> The deployment of expandable structures, sometimes generically called "balloons," into cancellous bone is known. For example, U.S. Pat. Nos. 4,696,888 and 5,108,404 disclose apparatus and methods using expandable structures to compact cancellous bone for the fixation of fractures or other osteoporotic and non-osteoporotic conditions of human and animal bones.

(Exhs. 27.F-H, Exh. 1.L and Exh. 1.H, U.S. Patent No. 6,979,341, col. 1, lines 21-27; U.S. Patent No. 6,719,773, col. 1, lines 23-29; U.S. Patent No. 6,716,216, col. 1, lines 16-22; U.S. Patent No. 6,641,587, col. 1, lines 19-25; U.S. Patent No. 6,607,544, col. 1, lines 21-28.)

\*   \*   \*   \*   \*

> The deployment of expandable structures into interior body regions is well known. For example, expandable structures, generically called "balloons," are deployed during angioplasty to open occluded blood vessels. As another example, U.S. Pat. Nos. 4,969,888 and 5,108,404 disclose apparatus and methods [for] the use of expandable structures for the fixation of fractures or other osteoporotic and non-osteoporotic conditions of human and animal bones.

(Exhs. 27.I-K, U.S. Patent No. 6,623,505, col. 1, lines 17-24; U.S. Patent No. 6,280,456, col. 1, lines 14-21; U.S. Patent No. 5,972,015, col. 1, lines 12-19.)

\*   \*   \*   \*   \*

> U.S. Pat Nos. 4,969,888 and 5,108,404 disclose apparatus and methods for the fixation of fractures or other conditions of human and other animal bone systems, both osteoporotic and non-osteoporotic. The apparatus and methods employ an expandable body to compress cancellous bone and provide an interior cavity.

8

(Exhs. 27.L and 27.M, U.S. Patent No. 6,899,719, col. 1, lines 37-44; U.S. Patent No. 6,248,110, col. 1, lines 35-42.)

*　*　*　*　*

> As will be described in greater detail later, expansion of the body 20 creates a cavity in cancellous bone. The use of expandable bodies to treat bones in this fashion is disclosed in U.S. Pat. Nos. 4,969,888 and 5,108,404, which are incorporated herein by reference.

(Exh. 27.N, U.S. Patent No. 6,048,346, col. 4, lines 34-38.)

*　*　*　*　*

> The use of expandable bodies to treat bones is generally disclosed in U.S. Pat. Nos. 4,969,888 and 5,108,404, which are incorporated herein by reference.

(Exh. 27.O, U.S. Patent No. 6,575,919, col. 3, lines 36-38.)

*　*　*　*　*

> The most commonly used void-forming method for bones is the inflatable bone tamp, as described in U.S. Pat. Nos. 4,969,888 and 5,108,404.

(Exh. 27.P, U.S. Patent No. 6,923,813, col. 1, lines 31-33.)

**D.** **The *Disc-O-Tech* Case**

14. In 2004, Kyphon sued Disc-O-Tech ("DOT") alleging infringement of several patents, including the '404 patent. (*See* Exh. 28, Complaint, *Kyphon, Inc. v. Disc-O-Tech Med. Techs., Ltd.*, C.A. No. 04-204-JJF (April 2, 2004 D. Del.).)

15. During the *Markman* proceedings, DOT argued that the "compacting" step in claim 1 should be interpreted so that its scope is limited to only involve balloons. (*See* Exh. 24, Special Master's Opinion and Order on Claim Construction, at 4.)

16. On May 16, 2005, a Special Master in the *DOT* case ruled that the claim 1 "compacting" step was not limited to only using a balloon. (*Id.* at 9.)

9

17. On May 16, 2005, the Special Master in the *DOT* case also ruled that the term "passage" in claim 1 was to be interpreted as "channel." (*Id.* at 12.)

### E. The Arcuate XP

18. On September 27, 2006, Medtronic launched its Arcuate XP system. (Exh. 3, Vaughn Decl. ¶ 5.)

19. As admitted by Kyphon, the Arcuate XP system does not involve the use of a balloon. (Exh. 25, Memorandum in Support of Kyphon's Application for Preliminary Injunction, at 8.)

20. On September 28, 2006, Kyphon filed a motion for preliminary injunction, alleging that the Arcuate XP system infringes claim 1 of the '404 patent. (*Id.* at 9.)

## IV. THE '404 PATENT IS INVALID UNDER 35 U.S.C. § 112 ¶ 1

### A. Claims 1 and 12 Have Been Interpreted As Not Being Limited to Compacting with a Balloon.

Claim 1 of the '404 patent reads as follows:

> A method of fixation of a fracture or impending fracture of a bone having bone marrow therein comprising
>
> [1] forming a passage in the bone marrow;
>
> [2] compacting the bone marrow to increasing the volume of said passage; and
>
> [3] filling the passage with a flowable material capable of setting to a hardened condition.

Claim 1 itself is devoid of any language describing the actual device to be used for carrying out the "compacting" step. In the *Disc-O-Tech* litigation, the Special Master construed claim 1 broadly. Specifically, he ruled that claim 1 was not limited by its terms to the use of a balloon to carry out the "compacting" step. (Exh. 24 at 9.)

10

**B.      The Only Written Description in the '404 Patent Specification Is to Compact with an Inflatable Device Such as a Balloon.**

Unlike the claims, the original disclosure in the specification of the '404 patent was replete with thorough and specific descriptions of the devices that the inventors contemplated to be used for performing each of the various steps of the claimed method, all of which uniformly prescribe the use of an inflatable device such as a balloon for the compacting step. Indeed, the title of the '404 patent makes that clear. This specificity was evident at the start, beginning in the Summary of Invention section of the '404 patent specification:

> *The method of the present invention* includes a series of steps including forming an incision in the body and penetrating the bone having the fracture with instruments including a guide pin and a cannula, drilling the bone marrow of the bone to enlarge the cavity or passage to be treated, following which an *inflatable device*, such as an *expandable balloon*, is inserted in the cavity and inflated. The expansion of the balloon *causes a compacting of the bone marrow* against the inner surface of the outer cortical wall of the bone to be treated *to further enlarge the cavity*.

(Exh. 1.C, '404 Patent, col. 2, lines 8-19 (emphasis added).) Thereafter, the "compacting" step was described in great detail exclusively in terms of the use of an inflatable device such as a balloon. The drawings and accompanying descriptions are consistent and uniform in their specific description of the device to be used to perform the compacting step of the claimed method, and it is *always* an inflatable device such as a balloon. (*See Id.,* FIGS. 21-23, 28 and 34, col. 3, lines 33-39, col. 3, lines 54-68, col. 4, lines 1-3, col. 4, lines 17-19.)

Yet for all its thoroughness and specificity, the '404 specification is devoid of even a mention – or a suggestion – of a device other than an inflatable device such as a balloon to be used for performing the compacting step of the claimed method. Thus, based on the invention as disclosed by the applicants in the original disclosure, the only means for performing the

11

compacting step which the applicants were in intellectual possession of was the use of a balloon. (Exh. 2, Belkoff Decl. ¶ 31.)

## C. The Specification Demonstrates That the Applicants Were Not in Intellectual Possession of the Invention As Claimed.

All patent claims must be sufficiently supported by a written description of the invention in the specification. 35 U.S.C. § 112 ¶ 1. To satisfy this "written description" requirement, the specification must "convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention." *Vas-Cath, Inc.*, 935 F.2d at 1563-64.

The *LizardTech* case is instructive on this point. In that case, the patent-in-suit contained a method claim broadly directed to creating a seamless array of discrete wavelet transmission ("DWT") (a form of digital image compression) coefficients. However, the original disclosure in the specification had disclosed only one particular method for creating a seamless array of DWT. The Federal Circuit affirmed summary judgment of invalidity for lack of sufficient written description. Specifically, the court found that "[a]fter reading the patent, a person of ordinary skill in the art would not understand how to make a seamless DWT generically and would not understand LizardTech to have invented a method for making a seamless DWT, except by 'maintaining updating sums of DWT coefficients.'" *LizardTech,* 424 F.3d at 1345. As a result, the Federal Circuit concluded as follows:

> Thus, a patentee cannot always satisfy the requirements of section 112, in supporting expansive claim language, merely by clearly describing one embodiment of the thing claimed. For that reason, we hold that *the description of one method* for creating a seamless DWT *does not entitle the inventor* of the '835 patent to claim *any and all means* for achieving that objective.

*Id.* at 1346 (emphasis added); *see also In Re Curtis*, 354 F.3d 1347, 1353 (Fed. Cir. 2004) (patentees only had intellectual possession of one friction enhancing coating for dental floss

12

because "[n]owhere in the examples, or in the remainder of the disclosure ... does Curtis name a suitable friction enhancing coating for a PTFE dental floss other than MCW").

Similarly, in the present case the specification does not convey with reasonable clarity to one of ordinary skill in the art that the inventors themselves possessed their invention as broadly as it is claimed in the '404 patent. Rather, one of ordinary skill in the art reading the original disclosure would conclude that the compacting step of the claimed method must be performed by a balloon.[2]

In a case such as this, where the claims are far broader than the narrow disclosure, such claims are invalid for lack of written description. *PIN/NIP*, 304 F.3d at 1248; *In Re Sus*, 306 F.2d 494, 505 (C.C.P.A. 1962) ("claims in an application which are broader than the applicant's disclosure are not allowable.").

## V.   **CONCLUSION**

For the reasons stated above, Medtronic respectfully requests that the Court enter an Order substantially in the form submitted herewith that claims 1 and 12 of U.S. Patent No. 5,108,404 are invalid under 35 U.S.C . § 112 ¶ 1 for lack of sufficient written description.

---

[2]     As demonstrated above, in at least nineteen issued patents, Kyphon specifically admitted that the method of the '404 patent was limited to the use of a balloon to perform the compacting step of the claimed method. It is clear from Kyphon's own words that the original '404 disclosure did not contemplate the use of any non-balloon device for this purpose.

13

Respectfully submitted,

s/ Bradley E. Trammell
Leo Bearman, Jr. (#8363)
Bradley E. Trammell (#13980)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
165 Madison Avenue, Suite 2000
Memphis, TN 38103
(901) 526-2000
btrammell@bakerdonelson.com

ATTORNEYS FOR DEFENDANTS
MEDTRONIC SOFAMOR DANEK, INC.,
MEDTRONIC SOFAMOR DANEK USA,
INC. and SDGI HOLDINGS, INC.

OF COUNSEL:

Steven M. Zager (*pro hac vice*)
Edward F. Fernandes (*pro hac vice*)
Michael Simons (*pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
1111 Louisiana Street, 44th Floor
Houston, TX 77002
(713) 220-5800

Michael A. O'Shea (*pro hac vice*)
Paul A. Gennari *(pro hac vice)*
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, DC 20036
(202) 887-4000

14

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of October, 2006, a copy of the foregoing electronically filed document was served on the parties listed below via first class mail, postage prepaid, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party:

Glen G. Reid, Jr.
Mark Vorder-Bruegge
Wyatt Tarrant & Combs
P. O. Box 775000
Memphis, TN 38177-5000

Frank E. Scherkenbach
Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110-2804

Thomas L. Halkowski
Fish & Richardson P.C.
919 N. Market Street
Suite 1100
Wilmington, DE 19899-1114

Karen I. Boyd
Fish & Richardson, P.C.
500 Arguello Street
Suite 500
Redwood City, CA 94063

Peter J. Toren
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019

s/ Bradley E. Trammell