# EXHIBIT EE

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| HARVINDER S. SANDHU, M.D. and<br>KYPHON INC., | ) |
| | ) |
| Plaintiffs, | ) No. 05-2863-Ml V |
| | ) |
| v. | ) |
| | ) |
| MEDTRONIC SOFAMOR DANEK, INC.,<br>MEDTRONIC SOFAMOR DANEK USA,<br>INC. and SDGI HOLDINGS, INC. | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT FOR INVALIDITY OF U.S. PATENT NO. 5,108,404 BASED ON 35 U.S.C. § 102

COME NOW Defendants Medtronic Sofamor Danek, Inc., Medtronic Sofamor Danek USA, Inc. and SDGI Holdings, Inc. (collectively "Medtronic") and move this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for partial summary judgment. In particular, U.S. Patent No. 5,108,404 is invalid pursuant to 35 U.S.C. §102 based on prior art. Therefore, Kyphon's claim of patent infringement of the '404 patent fails as a matter of law and summary judgment should be granted in favor of Defendants on this claim.

In support of this Motion for Summary Judgment, Defendants rely upon a memorandum submitted contemporaneously herewith, along with exhibits as noted therein.

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully request that their Motion for Partial Summary Judgment be granted and that Kyphon's claim for infringement of the '404 patent be dismissed with prejudice.

Respectfully submitted,

s/ Bradley E. Trammell.
Leo Bearman, Jr. (#8363)
Bradley E. Trammell (#13980)
**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC**
165 Madison Avenue, Suite 2000
Memphis, TN 38103
(901) 526-2000
btrammell@bakerdonelson.com

OF COUNSEL:
Steven M. Zager (*pro hac vice*)
Ed Fernandes
Michael Simons (*pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1111 Louisiana Street, 44th Floor
Houston, Texas 77002
Telephone: (713) 220-5800
Facsimile: (713) 236-0822

Michael A. O'Shea (*pro hac vice*)
Paul Gennari *(pro hac vice)*
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, DC 20036-1564
Telephone: (202) 887-4000
Facsimile: (202) 887-4288

Attorneys for Defendants Medtronic
Sofamor Danek, Inc., Medtronic Sofamor
Danek USA, Inc. and SDGI Holdings, Inc.

2

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of October, 2006, a copy of the foregoing electronically filed Defendants' Motion for Summary Judgment was served on the parties listed below via first class mail, postage prepaid, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party:

Glen G. Reid, Jr.
Mark Vorder-Bruegge
Wyatt Tarrant & Combs
P. O. Box 775000
Memphis, TN  38177-5000

Frank E. Scherkenbach
Fish & Richardson P.C.
225 Franklin Street
Boston, MA  02110-2804

Thomas L. Halkowski
Fish & Richardson P.C.
919 N. Market Street
Suite 1100
Wilmington, DE  19899-1114

Karen I. Boyd
Fish & Richardson, P.C.
500 Arguello Street
Suite 500
Redwood City, CA  94063

Peter J. Toren
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019


s/ Bradley E. Trammell

3

### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | | |
|---|---|---|
| HARVINDER S. SANDHU, M.D. and KYPHON INC., | ) ) ) | |
| Plaintiffs, | ) ) | No. 05-2863-MI V |
| v. | ) ) ) | |
| MEDTRONIC SOFAMOR DANEK, INC., MEDTRONIC SOFAMOR DANEK USA, INC. and SDGI HOLDINGS, INC., | ) ) ) ) | |
| Defendants. | ) | |

### MEDTRONIC'S MEMORANDUM OF LAW IN SUPPORT OF
### ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF
### INVALIDITY OF U.S. PATENT NO. 5,108,404 BASED ON 35 U.S.C. § 102

Leo Bearman, Jr. (#8363)
Bradley E. Trammell (#13980)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
165 Madison Avenue, Suite 2000
Memphis, TN 38103
(901) 526-2000
ATTORNEYS FOR DEFENDANTS
 MEDTRONIC SOFAMOR DANEK, INC.,
 MEDTRONIC SOFAMOR DANEK USA,
 INC. and SDGI HOLDINGS, INC.

OF COUNSEL:

Steven M. Zager (*pro hac vice*)
Edward F. Fernandes (*pro hac vice*)
Michael Simons (*pro hac vice*)
AKIN GUMP STRAUSS HAUER &
 FELD LLP
1111 Louisiana Street, 44th Floor
Houston, TX 77002
(713) 220-5800

Michael A. O'Shea (*pro hac vice*)
Paul A. Gennari *(pro hac vice)*
AKIN GUMP STRAUSS HAUER &
 FELD LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, DC 20036
(202) 887-4000

# TABLE OF CONTENTS

**Page**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | PROCEDURAL BACKGROUND | | 2 |
| III. | STATEMENT OF UNDISPUTED FACTS | | 3 |
| | A. | Medical Background | 3 |
| | B. | The '404 Patent Technology | 4 |
| | C. | Kyphon's Claim Interpretation | 5 |
| | D. | The Kennedy Reference | 6 |
| | E. | The Dick Reference | 7 |
| | F. | The Olerud Reference | 9 |
| IV. | LEGAL STANDARDS | | 10 |
| | A. | Summary Judgment | 10 |
| | B. | Anticipation | 10 |
| | C. | Obviousness | 11 |
| V. | CLAIMS 1 AND 12 OF THE '404 PATENT ARE INVALID | | 12 |
| | A. | The Dick Reference Anticipates Claims 1 and 12. | 12 |
| | B. | The Kennedy Reference Invalidates Claims 1 and 12. | 14 |
| | C. | The Olerud Reference Anticipates Claims 1 and 12. | 17 |
| VI. | CONCLUSION | | 18 |

## **TABLE OF AUTHORITIES**

### CASES

*B.F. Goodrich Co. v. Aircraft Braking Systems Corp.*, 72 F.3d 1577, 1583 (Fed. Cir. 1996)........18

*Graham v. John Deere*, 383 U.S. 1, 17 (1966) .............................................................................12

*In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994) ......................................................................12

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.,* 430 F.3d 1377, 1383 (Fed. Cir. 2005).....................12

*Iron Grip Barbell Co. v. USA Sports, Inc.,* 392 F.3d 1317 (Fed. Cir. 2004)...................................13

*Lockwood v. Am. Airlines, Inc.,* 107 F.3d 1565, 1571 (Fed. Cir. 1997)..........................................13

*Princeton Biochemicals, Inc. v. Beckman Coulter, Inc*., 411 F.3d 1332, 1338 (Fed. Cir. 2005) ...12

*Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 716 (Fed. Cir. 1991)...............................................13

*Schering Corp. v. Geneva Pharmaceuticals, Inc.,* 339 F.3d 1373 (Fed. Cir. 2003) .......................11

*Sentry Protection Prods., Inc. v. Eagle Mfg. Co*., 400 F.3d 910, 916 (Fed. Cir. 2005) .................12

*Telemac Cellular Corp. v. Topp Telecom, Inc.,* 247 F.3d 1316, 1327 (Fed. Cir. 2001) .................11

### STATUTES

35 U.S.C. § 102 .........................................................................................................................1, 10

35 U.S.C. § 103 .........................................................................................................................2, 11

### RULES

Fed. R. Civ. P. 56(a)........................................................................................................................10

M BET 989505 v1
2699732-002198 10/16/2006

## TABLE OF EXHIBITS

The evidence that supports this Summary Judgment Motion is contained in Defendants' October 16, 2006 Appendix of Exhibits submitted with Defendants' Response to Kyphon's Application for Preliminary Injunction, which is interrelated to this Summary Judgment Motion. The October 16, 2006 Appendix of Exhibits is incorporated herein by reference as if fully set forth herein. The specific exhibits from that Appendix used for this Summary Judgment Motion are listed here for the Court's convenience:

| Exh. No. | Description |
|---|---|
| 1 | Declaration of John M. Mathis, M.D., M.Sc. |
| 1.C | U.S. Patent No. 5,108,404 (the "'404 patent") |
| 1.D | U.S. Patent No. 4,969,888 (the "'888 patent") |
| 1.F | Walter Dick, Internal Fixation of Thoracic and Lumbar Spine Fractures, Hans Huber Publishers, 1987 (the "Dick reference") |
| 1.H | U.S. Patent No. 6,607,544 |
| 1.M | William R. Kennedy, M.D., "Fractures of the Tibial Condyles, A Preliminary Report on Supplementary Fixation With Methylmethacrylate," Clinical Orthopaedics and Related Research, 134:153-57, July-August 1978 (the "Kennedy reference") |
| 1.O | Sven Olerud et al., "Transpedicular Fixation of Thoracolumbar Vertebral Fractures," Lippincott Philadelphia, February, 1988; 227: 44-51 (the "Olerud reference") |
| 25 | Kyphon's Application for Preliminary Injunction |
| 26.A | L.C. Junqueira, et al., Basic Histology, (Lange 9th Ed. 1998) |
| 26.B | Disc-O-Tech case Docket Sheet |
| 26.C | Kyphon's Responses to Medtronic Interrogatory Nos. 6-7 |

M BET 989505 v1
2699732-002198 10/16/2006

# I.     INTRODUCTION

Under the Patent Act, a patent is invalid if it is "anticipated" by the "prior art." 35 U.S.C.
§ 102. Published prior art that predates the patent "anticipates" a patent claim when it discloses
all the limitations of that claim. Medtronic identifies three separate references published years
before the '404 patent was filed – the Dick reference, the Kennedy reference, and the Olerud
reference – each of which discloses every limitation of claim 1 of the '404 patent, thus rendering
claim 1 invalid as anticipated under § 102. Both the Dick and Olerud references also anticipate
claim 12 the '404 patent. Notably, none of these references were before the Patent Office when it
was considering whether to allow the '404 patent claims to issue.

The Dick, Kennedy and Olerud references were published in 1987, 1978, and early 1988,
respectively. Each disclosed a three-step surgical procedure for treating a bone: [1] drilling a
hole or inserting a conventional instrument (or bone tamp) into a fractured bone to form a
passage, [2] compacting the bone marrow with the bone tamp to increase the volume of the
passage, and [3] filling this resulting passage with either bone graft material or bone cement,
both of which are flowable materials that set to a hardened condition.

More than twenty years after Kennedy's 1978 publication, Kyphon filed its patent
application describing the same three steps, but with a different instrument – a balloon – to
perform step 2. Claim 1 of the '404 patent, however, lacks any reference to using a balloon and
thus merely recites the same three method steps that Dick, Kennedy, and Olerud disclosed years
earlier: "[1] forming a passage in the bone marrow, [2] compacting the bone marrow to increase
the volume of the passage, and [3] filling the passage with a flowable material that is capable of
setting to a hardened condition." Through interrogatory responses, Kyphon admits that it
interprets its patent claims as they were construed in a prior litigation involving the '404 patent;
that is, Kyphon does not seek to limit the claim to a balloon for performing the "compacting"

step (step 2). Therefore, under Kyphon's interpretation, each of the Dick, Kennedy and Olerud references anticipate claim 1, thus rendering it invalid.

Claim 12, which merely recites applying the three-step procedure in a vertebral body, is also anticipated by the Dick and Olerud references.

Further, a claim is invalid as obvious if the differences between the claim and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to one of ordinary skill in the art. 35 U.S.C. § 103. Because performing the three-step procedure in a vertebral body was a common practice by the time the patent application was filed, claim 12 is also rendered obvious under § 103 by the Kennedy reference and any combination of the references.

As discussed below, there is no genuine issue of material fact regarding the invalidity of claims 1 and 12 of the '404 patent and summary judgment should therefore be granted to Medtronic.

## II. PROCEDURAL BACKGROUND

On April 13, 2006, Medtronic and certain of its related entities sued Kyphon for patent infringement in the Northern District of California. Medtronic's California Patent Complaint also included a declaratory judgment count that included five Kyphon patents – including the '404 patent – that are invalid and not infringed by Medtronic.

Two weeks after Medtronic filed its lawsuit in California, Kyphon moved to transfer the declaratory judgment count involving Kyphon's patents to this court (*see* Docket No. 38) and amended its Complaint in this case to allege infringement of the same Kyphon patents raised in Medtronic's California patent complaint. *See* Docket No. 37. Kyphon's motion is pending before this Court.

2

Medtronic filed a Cross-motion to Dismiss, Stay or Transfer Plaintiffs' Second-Filed Patent claims back to California. *See* Docket No. 50. The motion seeks to stay Kyphon's patent claims in favor of Medtronic's earlier-filed patent claims in California, or to transfer Kyphon's patent claims to California so that they can be consolidated with Medtronic's first filed claims on the same patents. Medtronic's motion is also pending before this Court.

On September 28, 2006, Kyphon moved for a preliminary injunction against Medtronic to enjoin it from manufacturing and selling a new product that competes with Kyphon's product line. *See* Docket Nos. 114-126. The sole bases of Kyphon's preliminary injunction motion are the patent claims that are the subject of this summary judgment motion.

## III.   STATEMENT OF UNDISPUTED FACTS

### A.   Medical Background

1.      Bone is a combination of cellular and non-cellular elements organized into two general types: cortical and cancellous (or spongy) bone. Cortical bone is dense and in cross section appears as a uniformly solid substance; it can be thought of the bone one sees when viewing a skeleton. Cancellous bone is found inside the cortical bone and is characterized by a multifaceted, interconnected framework or trabeculae that is visible to the naked eye when a bone is split. In cross section, the structure of cancellous bone appears similar to that of a dried sponge. (Exh. 26.A, L.C. Junqueira, et al., Basic Histology, at 138-39 & 139 and Fig. 8-7 (Lange 9th Ed. 1998)).

2.      Bone marrow, the main site of blood cell production, is a jelly-like substance that resides within the interconnecting framework of the cancellous bone. (*Id.* at 236-37 & 238 Fig. 8-7.)

**B.** **The '404 Patent Technology**

3.      Kyphon's '404 patent, entitled "Surgical Protocol for Fixation of Bone Using

Inflatable Device," was filed on August 15, 1990, and issued on April 28, 1992. (Exh. 1.C, '404

patent.) The '404 is a continuation-in-part of the '888 patent, which was filed on February 9,

1989, and issued on November 13, 1990. (Exh. 1.D, '888 patent.)

4.      The '404 patent discloses a three-step surgical procedure for the fixation of

fractures or other conditions of human and other animal bone systems. The only device that the

patent specification discloses for performing the second step – "compacting the bone marrow" in

the bone – is an inflatable balloon:

> The method of the present invention includes a series of steps
> including [1] forming an incision in the body and penetrating the
> bone having the fracture with instruments including a guide pin
> and a cannula, drilling the bone marrow of the bone to enlarge the
> cavity or passage to be treated, [2] following which an inflatable
> device, such as an expandable balloon, is inserted in the cavity and
> inflated. The expansion of the balloon causes a compacting of the
> bone marrow against the inner surface of the outer cortical wall of
> the bone to be treated to further enlarge the cavity. Then, [3] a
> flowable synthetic bone material or methyl methacrylate cement is
> directed into the cavity and allowed to set to a hardened condition.

(Exh. 1.C, '404 patent, col. 2, lines 8-21.)

5.      Claim 1 of the '404 patent consists of three method steps – steps that make no

express reference to the use of a balloon:

> 1. A method of fixation of a fracture or impending fracture of a
> bone having bone marrow therein comprising:
>
> [1] forming a passage in the bone marrow;
>
> [2] compacting the bone marrow to increase the volume of said
> passage; and
>
> [3] filling the passage with a flowable material capable of setting
> to a hardened condition.

4

(Exh. 1, Mathis Decl. ¶ 22.)

6.      The '404 patent specification illustrates performing its method of fixation on the

spine (to treat vertebral body compression fractures), wrist (to treat Colles' fractures) and

shoulder (to treat the humerus):

> The invention is especially suitable for use in the fixation of osteo-
> porotic vertebral body compression fractures, Colles' fractures and
> fractures of the proximal humerus.

(Exh. 1.C, '404 patent, col. 2, lines 5-8; Exh. 1, Mathis Decl. ¶ 23.)

7.      Claim 1 of the '404 patent is not limited to a particular type of bone.   (Exh. 25,

Kyphon's Application for Preliminary Injunction, at 10.)

8.      Dependent claim 12 of the '404 patent limits the method of claim 1 to a vertebral

body:

> A method as set forth in claim 1, wherein the fracture is a fracture
> of a vertebral body of the human spine.

(Exh. 1.C, '404 patent, claim 12, col. 10, lines 11-13; Exh. 25, Kyphon's Application for
Preliminary Injunction, at 10.)

## C.      **Kyphon's Claim Interpretation**

9.      Kyphon interprets claim 1 as it was construed in a prior litigation involving the

'404 patent, captioned *Kyphon, Inc. v. Disc-O-Tech Medical Technologies, Ltd. and Disc*

*Orthopaedic Technologies, Inc.*, No. 04-204-JJF (D.Del.) ("*Disc-O-Tech*").   (Exh. 26.C,

Kyphon's Responses to Medtronic Interrogatory Nos. 6-7, at 6.)

10.     Kyphon was satisfied with the claim construction ruling by the *Disc-O-Tech* court

and did not object to the ruling.   (*See* Exh. 26.B, *Disc-O-Tech* case Docket Sheet).

11.     Kyphon asserts that any claim terms not construed by in *Disc-O-Tech* court, such

as claim 12, should be given their ordinary meaning.   (Exh. 26.C, Kyphon's Responses to

Medtronic Interrogatory Nos. 6-7, at 6.)

12.     Accordingly, Kyphon's interpretation of claim 1 of the '404 patent is (italicized and boldfaced terms were interpreted by the *Disc-O-Tech* court)

| Claim 1 of the '404 Patent | Kyphon's Interpretation |
|---|---|
| A method of fixation of a fracture or impending fracture of a bone having *bone marrow* therein comprising: | a combination of the connective tissue and the cancellous bone framework inside a bone |
| [1] *forming a passage in the bone marrow*; | forming a channel in the bone marrow |
| [2] *compacting the bone marrow to increase the volume of said passage*; and | compacting the bone marrow to increase the volume of the created channel |
| [3] filling the passage with a *flowable material capable of setting to a hardened condition*. | filling the created channel with a material that is capable of flowing into the channel and of setting to a hardened condition. |

Under Kyphon's interpretation, "compacting" (step 2) can be performed by any means and is not limited to compaction by a balloon. (Exh. 25, Kyphon's Application for Preliminary Injunction at 10.)

### D.     The Kennedy Reference

13.     The Kennedy reference was published in 1978 and is prior art to the '404 patent under 35 U.S.C. § 102(b). (Exh. I.M.)

14.     The Kennedy reference was not before the Patent Office when it was considering whether to allow '404 patent claims to issue.

15.     The Kennedy reference relates to the treatment of osteoporotic bone fractures in the tibia (of the knee) using the same technique Kyphon alleges it invented. (Exh. 1, Mathis Decl. ¶ 43.)

16.     The Kennedy reference teaches the following three steps:

> [1] forming a passage in the bone marrow, by disclosing that "the bone exposed on the anterior tibia provided a site in which *to fashion a window [in the cordical bone to gain access to the*

6

*cancellous bone]* through which the depressed segments of the joint surface could be visualized and manipulated. *Through the window in the tibia, a blunt instrument could be inserted* and used to push up the depressed bone fragments."

[2] compacting the bone marrow to increase the volume of said passage, by disclosing that "through the window in the tibia, a blunt instrument could be inserted and used to *push up the depressed bone fragments.* ... However, once the articular fragments had been put in their proper place an *obvious cavity was present* in the subarticular bone."

[3] filling the passage with a flowable material capable of setting to a hardened condition, by disclosing that "the crushed cancellous bone beneath the articular surface usually left a space which we elected to *fill with methylmethacrylate rather than bone graft.*"

(Exh. 1.M, Kennedy reference, at 154 (emphasis added); Exh. 1, Mathis Decl. ¶ 44.)

## E. The Dick Reference

17. The Dick reference published in 1987 and is prior art to the '404 patent under 35

U.S.C. § 102(b). (Exh. 1.F.)

18. The Dick reference was not before the Patent Office when it was considering

whether to allow '404 patent claims to issue.

19. The Dick reference discloses the treatment of bone fractures in vertebral bodies

using the same technique Kyphon alleges it invented. (Exh. 1, Mathis Decl. ¶ 31.)

20. The Dick reference teaches the following three steps:

[1] forming a passage in the bone marrow, by disclosing that "Through a posterior approach the pedicle of the fractured vertebra is drilled as if to apply a pedicular screw, but with a thicker drill bit (up to 6 mm),"

[2] compacting the bone marrow to increase the volume of said passage, by disclosing that "a slightly bent impactor can then be introduced into the vertebral body through the pedicle and the cancellous bone within the vertebra is pressed against the end plates and against the anterior wall of the vertebra so that a central cavity is formed,"

7

> [3] filling the passage with a flowable material capable of setting
> to a hardened condition, by disclosing that "this [cavity] is then
> tightly filled with bone fragments of the impacted cancellous
> [autologous (at pg. 70)] bone graft. This requires an enormous
> amount of cancellous bone graft before the vertebra is filled."

(Exh. 1.M, Dick reference, at page 46, 70; Exh. 1, Mathis Decl. ¶ 32.)

21.    The Dick reference fills the cavity with "autologous bone graft," as recited above

in step 3.

22.    Bone graft is bone material taken from another part of the patient, such as the hip,

and finely ground into a paste-like consistency – commonly known in the medical industry as

"autologous bone graft" or "autograft":

> The following technique has proved to be a simple, rapid and effective
> method for obtaining the necessary ***autologous bone graft material*** in a
> finely ground form (Dick [40])... With a conventional hip prosthesis
> acetabular reamer of 44 mm or 46 mm in diameter, ***bone graft can be
> removed and simultaneously converted into a paste-like mixture of finely
> ground cortical and cancellous bone***.

(Exh. 1.F, the Dick reference, page 71)(emphasis added); Exh. 1, Mathis Decl. ¶¶ 34-35.)

23.    In several other Kyphon patents directed to similar subject matter – and which

incorporate the '404 patent by reference – the named inventors, including the co-inventor of the

'404 patent, expressly informed the Patent Office that bone graft material (*i.e.*, autograft tissue)

is a "flowable material that sets to a hardened condition":

> It may be indicated, due to disease or trauma, to compress cancellous bone
> within the vertebral body. The compression, for example, can be used to
> form an interior cavity, which receives a filling material, ***e.g., a flowable
> material that sets to a hardened condition***, like bone cement, allograft
> tissue, ***autograft tissue*** [*i.e.,* bone graft], hydroxyapatite, or synthetic
> bone substitute, as well as a medication, or combinations thereof, to
> provide improved interior support for cortical bone or other therapeutic
> functions, or both.

(*See, e.g.*, Exh. 1.H, U.S. Patent No. 6,607,544, Col. 2, line 66 – col. 3, line 7; Exh. 1, Mathis
Decl. ¶¶ 37-39.)

M BET 989505 v1
2699732-002198 10/16/2006

24.    The Dick reference also demonstrates that, by the time of the effective filing date

of the '404 patent application (February 9, 1989), it was widely known to those skilled in the art

to perform the Kennedy procedure (performed on the tibial plateau of the knee) on vertebral

bodies:

> In fractures of the tibial plateau [of the knee] the bony defect
> which has arisen as a result of the injury is filled with cancellous
> bone through a cortical window. The same principle can be used
> in vertebral compression fractures, using the pedicle as a window.

(Exh. 1.F, Dick reference, at page 46; Exh. 1, Mathis Decl. ¶ 49.)

## F.    The Olerud Reference

25.    The Olerud reference published in early 1988 and is prior art to the '404 patent

under 35 U.S.C. § 102. (Exh. 1.O.)

26.    The Olerud reference was not before the Patent Office when it was considering

whether to allow '404 patent claims to issue.

27.    The Olerud reference, like the Dick reference, relates to the treatment of fractured

vertebral bodies using the same technique Kyphon alleges it invented. (Exh. 1, Mathis Decl. ¶

54.)

28.    The Olerud reference teaches the following three steps:

> [1] forming a passage in the bone marrow, by disclosing that
> "similarly, with the insertion of transpedicular screws, a hole can
> be made with a 5-mm drill through one of the pedicles of the
> fractured vertebra into the vertebral body,"

> [2] compacting the bone marrow to increase the volume of said
> passage, by disclosing that "a slightly curved punch is brought
> through the pedicle into the vertebral body (Fig. 3); under
> fluoroscopic control with the image intensifier, the end plates and
> anterior wall of the vertebra are reduced, if possible,"

> [3] filling the passage with a flowable material capable of setting
> to a hardened condition, by disclosing that "an aural speculum is

> inserted into the pedicular hole and a cancellous bone graft ... is
> pressed into the vertebra."

(Exh. 1.O, Olerud reference, at 47; Exh. 1, Mathis Decl. ¶ 55.)

29.     Figure 3 of the Olerud reference illustrates the "curved punch" used to compact

the interior bone tissue, reduce the end plates and create a cavity:



## ARGUMENT

## IV.     LEGAL STANDARDS

### A.     Summary Judgment

Summary judgment is proper when there is no genuine issue as to any material fact and

the moving party is otherwise entitled to judgment as a matter of law. *See, e.g.*, Fed. R. Civ. P.

56(a). Thus, if the non-movant fails to present sufficient evidence to demonstrate that there is a

genuine issue of material fact requiring trial, summary judgment is appropriate. *See, e.g.*,

*Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1327 (Fed. Cir. 2001)

### B.     Anticipation

Section 102 of the patent statute requires that a patentable invention be novel; lack of

novelty therefore renders a patent invalid on the ground of anticipation. 35 U.S.C. § 102; *see*

10

*also Telemac Cellular*, 247 F.3d at 1327. To determine whether a patent is invalid due to anticipation, the Court must interpret the patent's claims as a matter of law and then determine whether a single prior art reference discloses each limitation of the claimed invention. *Schering Corp. v. Geneva Pharmaceuticals,* 339 F.3d 1373, 1377 (Fed. Cir. 2003). When reviewing a prior art reference, a court "must consider [it] together with the knowledge of one of ordinary skill in the pertinent art." *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994) (citation omitted).

Summary judgment of anticipation is appropriate when, following construction of the claims, there is no genuine issue of material fact that a prior art reference discloses each limitation of the claim. *IPXL Holdings, L.L.C. v. Amazon.com, Inc.,* 430 F.3d 1377, 1383 (Fed. Cir. 2005); *Sentry Protection Prods., Inc. v. Eagle Mfg. Co.*, 400 F.3d 910, 916 (Fed. Cir. 2005).

## C.     Obviousness

Under Section 103, a patent claim is invalid as obvious if "the differences between the [claimed] subject matter…and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art…" 35 U.S.C. § 103. In determining whether the claimed subject matter would have been obvious, the Court (1) determines the scope and content of the prior art; (2) ascertains the differences between the prior art and the claims at issues; (3) resolves the level of ordinary skill in the pertinent art; and (4) considers any secondary considerations of non-obviousness that may be relevant. *Graham v. John Deere*, 383 U.S. 1, 17 (1966). "A suggestion or motivation to modify prior art teachings may appear in the content of the prior art … or even in the knowledge of one of ordinary skill in the art." *Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 411 F.3d 1332, 1338 (Fed. Cir. 2005).

Summary judgment of obviousness is appropriate when, following construction of the claims, the "factual inquiries into obviousness present no genuine issue of material fact." *Ryko*

11

*Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 716 (Fed. Cir. 1991); *see also Iron Grip Barbell Co., Inc.. v. USA Sports, Inc.,* 392 F.3d 1317 (Fed. Cir. 2004); *Lockwood v. American Airlines, Inc.,* 107 F.3d 1565, 1571 (Fed. Cir. 1997).

For the purposes of this motion, Medtronic applies Kyphon's proposed claim interpretations, which Kyphon has adopted from the prior *Disc-O-Tech* case. Therefore, the Court's task in this motion is only to apply Kyphon's interpretation to the prior art.

## V. CLAIMS 1 AND 12 OF THE '404 PATENT ARE INVALID

### A. The Dick Reference Anticipates Claims 1 and 12.

Kyphon interprets the claims as construed by the *Disc-O-Tech* court. (Exh. 26.C, Kyphon's Responses to Medtronic Interrogatory Nos. 6-7, at 6.) Under this interpretation, the Dick reference anticipates claims 1 and 12 of the '404 patent because it discloses each element in the claims, as set forth in the claim chart below. (Exh. 1, Mathis Decl. ¶ 32.) Therefore, claims 1 and 12 are invalid as anticipated under 35 U.S.C. § 102.

| Claims 1 and 12 of the '404 Patent | Dick Reference |
| --- | --- |
| 1. A method of fixation of a fracture or impending fracture of a bone having bone marrow therein comprising: | "The same principle can be used in vertebral compression fractures, using the pedicle as a window." Page 46 |
| [1] forming a passage in the bone marrow; | "Through a posterior approach *the pedicle of the fractured vertebra is drilled ...*" Page 46 |
| [2] compacting the bone marrow to increase the volume of said passage; and | "*A slightly bent impactor* can then be introduced into the vertebral body through the pedicle and the *cancellous bone within the vertebra is pressed against the end plates* and against the anterior wall of the vertebra *so that a central cavity is formed.*" Page 46 |
| | "In the vast majority of operatively treated fractures the vertebral body cancellous bone is *compressed.* This leaves a large ventral defect after reduction, and an integral part of the … instrument is the filling of ventral defects with autologous bone graft." Page 70 |

12

| Claims 1 and 12 of the '404 Patent | Dick Reference |
|---|---|
| [3] filling the passage with a flowable material capable of setting to a hardened condition. | "This is then *tightly filled* with small fragments of impacted cancellous bone graft. *This requires an enormous amount of cancellous bone graft before the vertebra is filled.*" Page 46 |
| | "Rapid fracture consolidation is the aim in order to obtain an anterior column capable of carrying load. ... This leaves a large ventral defect after reduction, and an integral part of the ... instrument is the filling of ventral defects with *autologous bone graft*.... A small funnel ... allows the transplanted bone [graft] to be pushed anteriorly into the defect ... Because the diameter of the funnel is small, the bone graft must be separated into very small pieces. Optimally, it should have a *paste-like consistency.*" Page 70 |
| 12. A method as set forth in claim 1, wherein the fracture is a fracture of a vertebral body of the human spine. | "The same principle can be used in vertebral compression fractures, using the pedicle as a window." Page 46 |

Specifically, Dick discloses drilling a hole in the pedicle of the vertebral body to form a passage (step 1). (Exh. 1, Mathis Decl. ¶ 33.) A slightly bent impactor is introduced into the passage and pressed against the bone and bone marrow to create a central cavity (*i.e.*, increase the volume of the passage) (step 2). *Id.* The resulting passage is then filled with autologous bone graft (*i.e.*, a material that sets to a hardened condition) (step 3). *Id.*

As disclosed in the Dick reference, bone graft is simply bone material taken from another part of the patient, such as the hip, and finely ground into a paste-like consistency – commonly known in the medical industry as "autologous bone graft" or "autograft":

> The following technique has proved to be a simple, rapid and effective method for obtaining the necessary *autologous bone graft* material in a finely ground form (Dick [40])... With a conventional hip prosthesis acetabular reamer of 44 mm or 46 mm in diameter, *bone graft can be removed and simultaneously converted into a paste-like mixture of finely ground cortical and cancellous bone*.

(Exh. 1.F, the Dick reference, page 71) (emphasis added); Exh. 1, Mathis Decl. ¶¶ 34-36.)

13

Kyphon admits that autologous bone graft is a "flowable material capable of setting to a hardened material." In several other Kyphon patents directed to similar subject matter – and which incorporate the '404 patent disclosure by reference – the named inventors, including the co-inventor of the '404 patent Mark Reiley, expressly informed the Patent Office that bone graft material (*i.e.*, autograft tissue) is a "flowable material that sets to a hardened condition":

> It may be indicated, due to disease or trauma, to compress cancellous bone within the vertebral body. The compression, for example, can be used to form an interior cavity, *which receives a filling material, e.g., a flowable material that sets to a hardened condition*, like bone cement, allograft tissue, *autograft tissue* [*i.e.*, bone graft], hydroxyapatite, or synthetic bone substitute, as well as a medication, or combinations thereof, to provide improved interior support for cortical bone or other therapeutic functions, or both.

(*See, e.g.*, Exh. 1.H, U.S. Patent No. 6,607,544, Col. 2, line 66 – col. 3, line 7 (emphasis added); Exh. 1, Mathis Decl. ¶¶ 37-39.)

Therefore, there can be no genuine dispute that the Dick reference anticipates claims 1 and 12 of the '404 patent.

## B. The Kennedy Reference Invalidates Claims 1 and 12.

Under Kyphon's interpretation of the claims, the Kennedy reference also anticipates claim 1 of the '404 patent because it discloses each element in the claim, as set forth in the claim chart below. (Exh. 1, Mathis Decl. ¶ 44.) Therefore, claim 1 is invalid as anticipated under 35 U.S.C. § 102.

| Claim 1 of the '404 Patent | Kennedy Reference |
|---|---|
| A method of fixation of a fracture or impending fracture of a bone having bone marrow therein comprising: | "A significantly depressed tibial condylar fracture in the osteoporotic elderly patient provides a most difficult problem for which many techniques have been developed… Since 1973 we have used methylmethacrylate in conjunction with metallic devices to treat these fractures.  The following is |

14

| Claim 1 of the '404 Patent | Kennedy Reference |
|---|---|
| | the report based on 7 cases with follow-up ranging from 20 to 51 months." Page 153 |
| [1] forming a passage in the bone marrow; | "The bone exposed on the anterior tibia provided a site in which *to fashion a window* through which the depressed segments of the joint surface could be visualized and manipulated. *Through the window in the tibia, a blunt instrument could be inserted* and used to push up the depressed bone fragments." Page 154 |
| [2] compacting the bone marrow to increase the volume of said passage; and | "Through the window in the tibia, *a blunt instrument could be inserted and used to push up the depressed bone fragments*. By visualizing the interior of the joint through the capsular incision anatomical *reduction* was carried out. However, once the articular fragments had been put in their proper place an *obvious cavity was present* in the subarticular bone." Page 154 |
| [3] filling the passage with a flowable material capable of setting to a hardened condition. | "The crushed cancellous bone beneath the articular surface usually left a space which we elected to *fill with methylmethacrylate rather than bone graft*...The surgeon must be aware that the methylmethacrylate['s] ... purpose is to maintain the articular fragments in their elevated position, thus providing support for the compressed articular surface." Page 154 <br><br> "*Once the methylmethacrylate had hardened* the joint was then flexed and extended." Page 154 |

Specifically, Kennedy discloses inserting a blunt instrument into the bone to form a passage (step 1). (Exh. 1, Mathis Decl. ¶ 45.) The instrument is then pushed against the bone and bone marrow to reduce the fracture (*i.e.*, move the bone to its correct position), which creates a cavity (*i.e.*, increase the volume of the passage) (step 2). *Id.* The resulting passage is

15

then filled with flowable bone cement (namely, methylmethacrylate), which sets to a hardened condition (step 3). [1]  *Id.* Therefore, Kennedy anticipates claim 1 of the '404 patent.

Claim 12 of the '404 patent is invalid as obvious under 35 U.S.C. § 103 in view the Kennedy reference. As shown above, the Kennedy reference discloses each element of claim 1 of the '404 patent. Claim 12 directs the three-step procedure of claim 1 to be performed on a "vertebral body of the human spine." As the Dick reference clearly demonstrates (as well as the Olerud reference, *infra*), by the 1989 filing date,[2] it was well known to those skilled in the art that the same three-step procedure performed on the tibial plateau (of the knee) was also performed in vertebral bodies. (Exh. 1, Mathis Decl. ¶¶ 48-49. )[3] As such, there is no genuine dispute that the Kennedy reference renders claim 12 of the '404 patent invalid under 35 U.S.C. § 103.

---

[1]  Also, Kennedy's disclosure of "elect[ing] to fill [the cavity] with methylmethacrylate *rather than bone graft"* makes clear that it was a mere matter of choice, even back in 1976, to use methylmethacrylate (a bone cement) instead of bone graft. (Exh. 1, Mathis Decl. ¶ 45 at n.2.) This is consistent with Kyphon's admission – as stated in its other patents as discussed above – regarding the interchangeability of bone cement and bone graft material.

[2]  The effective filing date of the '404 patent application is February 9, 1989, the filing date of the application that led to the '888 patent, but only for subject matter that is common to both applications.

[3]  Moreover, the Dick reference expressly teaches that the "same principle" used to perform the procedure on "fractures of the tibial plateau [the location disclosed in the Kennedy reference]" also "can be used in vertebral compression fractures, using the pedicle as a window." (Exh. 1.F, Dick reference at pg. 46; Exh. 1, Mathis Decl. ¶ 49.) Therefore, one of ordinary skill in the art would have known to apply the procedure disclosed in the Kennedy reference on a vertebral body.  *See, e.g., B.F. Goodrich Co. v. Aircraft Braking Systems Corp.*, 72 F.3d 1577, 1583 (Fed. Cir. 1996) (it was logical to one skilled in the art that a procedure conducted with replacement parts could be performed with initially fabricated parts).

16

### C.    The Olerud Reference Anticipates Claims 1 and 12.

The Olerud reference also anticipates claims 1 and 12 under 35 U.S.C. § 102. (Exh. 1, Mathis Decl. ¶ 55.) The Olerud reference discloses every limitation of the claims, as set forth in the claim chart below.

| Claims 1 and 12 of the '404 Patent | Olerud Reference |
| --- | --- |
| 1. A method of fixation of a fracture or impending fracture of a bone having bone marrow therein comprising: | "Similarly, with the insertion of transpedicular screws, a hole can be made with a 5-mm drill through one of the pedicles of the fractured vertebra into the vertebral body." Page 47 |
| [1]  forming a passage in the bone marrow; | "Similarly, with the insertion of transpedicular screws, *a hole can be made with a 5-mm drill through one of the pedicles of the fractured vertebra into the vertebral body*." Page 47 |
| [2]  compacting the bone marrow to increase the volume of said passage; and | "*A slightly curved punch* is brought through the pedicle into the vertebral body (Fig. 3); under fluoroscopic control with the image intensifier, *the end plates and anterior wall of the vertebra are reduced*, if possible." Page 47 |
| [3]  filling the passage with a flowable material capable of setting to a hardened condition. | "An aural speculum is inserted into the pedicular hole and a cancellous *bone graft – bone paste* obtained from the posterior aspect of the iliac crest with an acetabular reamer – *is pressed into the vertebra*." Page 47 |
| 12. A method as set forth in claim 1, wherein the fracture is a fracture of a vertebral body of the human spine. | "Similarly, with the insertion of transpedicular screws, a hole can be made with a 5-mm drill through one of the pedicles of the fractured vertebra into the vertebral body." Page 47 |

Specifically, Olerud discloses drilling a hole into the pedicle of the vertebral body to form a passage (step 1). (Exh. 1, Mathis Decl. ¶ 56.) A slightly curved punch is introduced into the passage and pressed against the bone and bone marrow to reduce the fracture and create a

17

cavity (*i.e.*, increase the volume of the passage) (step 2). *Id.* Figure 3 of the Olerud reference, reproduced and annotated below, illustrates the "curved punch" used to compact the interior bone tissue, reduce the end plates and create a cavity. *Id.* at ¶ 57. Figure 3 is strikingly similar to Figure 28 in the '404 patent, which illustrates performance of step 2 with a balloon:



Figure 3 of Olerud                                    Figure 28 of '404 patent

*Id.* at ¶ 58. The resulting passage is then filled with bone graft, which as discussed above with respect to the Dick reference, Kyphon admits is a material that sets to a hardened condition (step 3). *Id.* at ¶ 56.

Therefore, there can be no genuine dispute that the Olerud reference anticipates claims 1 and 12 of the '404 patent.

## VI.    CONCLUSION

For the aforementioned reasons, Medtronic respectfully requests entry of summary judgment of invalidity of claims 1 and 12 of the '404 patent because the Dick reference anticipates claims 1 and 12, the Kennedy reference anticipates claim 1 and renders claim 12 obvious, and the Olerud reference anticipates claims 1 and 12.

18

Respectfully submitted,

s/ Bradley E. Trammell
Leo Bearman, Jr. (#8363)
Bradley E. Trammell (#13980)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
165 Madison Avenue, Suite 2000
Memphis, TN 38103
(901) 526-2000
btrammell@bakerdonelson.com

ATTORNEYS FOR DEFENDANTS
MEDTRONIC SOFAMOR DANEK, INC.,
MEDTRONIC SOFAMOR DANEK USA,
INC. and SDGI HOLDINGS, INC.

OF COUNSEL:

Steven M. Zager (*pro hac vice*)
Edward F. Fernandes (*pro hac vice*)
Michael Simons (*pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
1111 Louisiana Street, 44th Floor
Houston, TX 77002
(713) 220-5800

Michael A. O'Shea (*pro hac vice*)
Paul A. Gennari *(pro hac vice)*
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, DC 20036
(202) 887-4000

M BET 989505 v1
2699732-002198 10/16/2006

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of October, 2006, a copy of the foregoing electronically filed was served on the parties listed below via first class mail, postage prepaid, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party:

Glen G. Reid, Jr.
Mark Vorder-Bruegge
Wyatt Tarrant & Combs
P. O. Box 775000
Memphis, TN 38177-5000

Frank E. Scherkenbach
Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110-2804

Thomas L. Halkowski
Fish & Richardson P.C.
919 N. Market Street
Suite 1100
Wilmington, DE 19899-1114

Karen I. Boyd
Fish & Richardson, P.C.
500 Arguello Street
Suite 500
Redwood City, CA 94063

Peter J. Toren
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019

s/ Bradley E. Trammell

M BET 989505 v1
2699732-002198 10/16/2006